IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF WISCONSIN

---

DESHAWN D. JOHNSON,

                Plaintiff,

   v.                                                OPINION and ORDER

SERGEANT KIM                                           24-cv-203-wmc
and CORRECTIONAL OFFICER FELTZ,

                Defendants.

---

DeShawn D. Johnson is proceeding against defendants Sergeant Kim and Correctional Officer Feltz on claims that they provided inadequate medical care for his injured left leg and foot in violation of his Eighth Amendment rights while he was incarcerated at New Lisbon Correctional Institution. Dkt. 8 at 5. Specifically, he alleges that defendants refused to give him an extra pillow to elevate his leg and relieve swelling, pain, and difficulty walking despite knowing that he had a medical order for this item. This order addresses Johnson's: (1) motion for Rule 11 sanctions, Dkt. 20; (2) motion to subpoena a witness and to appoint a court reporter, Dkt. 40; (3) three motions to compel discovery, Dkts. 30, 32, & 42, and (4) motion to stay deadlines pending the court's ruling on his discovery motions, Dkt. 46.[1]

    **A. Motion for Rule 11 Sanctions, Dkt. 20.**

Johnson argues that defendants gave dishonest answers to his allegations in ¶¶ 12–28 of the complaint and asks the court to deem those allegations admitted and to fine defense

---

[1] Johnson has also filed a motion asking the court to grant his motion for Rule 11 sanctions because defendants allegedly did not file an opposition brief by their September 13, 2024, deadline. Dkt. 27. That motion is DENIED because defendants timely filed their opposition brief with the court. Dkt. 25.

counsel $5,000. Federal Rule of Civil Procedure 11(b)(4) mandates that an attorney who presents a pleading to the court certify "that to the best of the person's knowledge, information, and belief, formed after an inquiry reasonable under the circumstances . . . the denials of factual contentions are warranted on the evidence or, if specifically so identified, are reasonably based on belief or a lack of information." Johnson notes that he gave defendants 21 days to withdraw or correct their answer as required under Federal Rule of Civil Procedure 11(c)(2) before bringing his motion.

Johnson challenges defendant's answer that they "lack sufficient knowledge or information to form a belief as to the truth of" each of the following 17 allegations (Dkt. 1, ¶¶ 12–28):

| | |
|---|---|
| ¶ 12 | Moment after Johnson arrived to C-unit on August 21, 2023, NLCI at about 7:30 am, was place[d] on lock down. |
| ¶ 13 | Once Johnson entered into his cell on August 21, 2023, he noticed he did not have any bed[d]ing, such as sheets, blanket, and/or pillows. |
| ¶ 14 | Johnson immediately notified unit staff that he did not have any sheets, blankets, a pillow, his medically prescribed extra pillow, and none of his property. |
| ¶ 15 | An unknown correctional officer informed Johnson, that because the institution was on lock down; and all staff were conducting cell and strip search[e]s, Johnson would have to wait to receive his bed[d]ing; and property. |
| ¶ 16 | On August 21, 2023, Johnson did not receive his proper[t]y; Johnson was only given two sheets. |
| ¶ 17 | On August 22, 2023, Johnson awoke to swelling in his left leg and foot, which caused pain and [sic] difficult to walk. |

¶ 18   On August 22, 2023, Johnson informed defendant Kim, that his left leg and foot was swollen; and that he was [sic] pain and could barely walk, because he was not give[n] his medically prescribed extra pillow; or any pillow to [sic] elevant his leg and foot with ice as the doctor ordered.

¶ 19   Johnson also informed defendant Kim, that the medical prescribed extra pillow restriction was posted in WICS, if he (defendant Kim) checked WICS.

¶ 20   Defendant Kim, then checked WICS and was able to find Johnson's extra pillow restriction in WICS.

¶ 21   Defendant Kim stated, "I see you do have an extra pillow restriction"

¶ 22   But before defendant Kim could finish his statement defendant Feltz interrupted and stated "you have to write HSU (Health Seri[c]e Unit) for the pillow.

¶ 23   Johnson told defendant Feltz that writing HSU to obtain a medical extra pillow was not NLCI's policy or procedure.  And that the medical pillows were in the storage room on the unit.

¶ 24   Johnson again requested to be given [a] medical extra pillow or any alternative, that would allow him to [sic] elevant his leg and foot to stop the pain.

¶ 25   Defendant Feltz told Johnson to get away from the officer station, because the sergeant (defendant Kim) did not have time to deal with his bullshit.

¶ 26   Johnson refused to leave; and again ask[ed] defendant Kim to give him a pillow or anything that he could use to [sic] elevant his leg and foot with ice to stop the pain.

¶ 27   Defendant Kim, then stated "You heard Officer Feltz, I don't have time, and I don't care about your medical problems.  Write HSU and get away from the Officer Station or I'll send you back to seg."

¶ 28   For seven days (from August 22 to August 29, 2023) Johnson repeatedly told both defendant Kim and Feltz, verbally and by way of written communication (request slip – Doc 0643 form), that Johnson: #1) had a medical issue that required him to be provided with an extra pillow; #2) Johnson was in pain, and was having

>difficulties to walk, because no one was giving him the extra pillow and/or any alternative to use to [sic] elevant his leg and foot.

Although the court generally discourages boilerplate answers, the court will not sanction counsel or defendants here. Johnson repeatedly argues that with "the slightest effort," defendants could have given more precise answers to ¶¶ 12–28 and admitted these allegations.[2] *E.g.*, Dkt. 20 at 2. But defense counsel asserts without dispute that she reviewed property records, bed assignments, unit logbooks, shift reports, and spoke with individuals with knowledge of institution operations in preparing the answer. Dkt. 25 at 2.

That is a reasonable inquiry and more than "the slightest effort" at the pleadings stage of this case. Discovery had not yet begun when defendants filed their answer, so defendants did not yet have cause or sufficient opportunity to further develop their case by, for example, speaking with witnesses, gathering and reviewing additional documents and obtaining a signed release from Johnson to review his medical records. *See, e.g., Anderson v. Jeanpierre, et al.*, Case No. 22-C-270, 2022 WL 10073448, at *1 (E.D. Wis. Oct. 17, 2022) ("Requiring defendants to scour Plaintiff's medical records to get informed on the issues in question [in preparing an answer] is more than 'the slightest effort'."). This is why defendants could not yet attest with more certainty to the contents of their specific conversations from nearly a year earlier, Johnson's conversations with non-defendants, his medical history, and what property Johnson

---

[2] To the extent Johnson relies on caselaw authorizing federal courts to disregard statements in answers that are "obviously sham," *e.g.*, *Harvey Aluminum (Inc.) v. NLRB*, 335 F.2d 749, 758 (9th Cir. 1964), that standard is no longer valid after an amendment to Rule 11 eliminated the provision allowing courts to strike pleadings as sham and false. *See* Fed. R. Civ. P. 11 advisory committee's note to 1983 amendment.

4

received in his cell. Nor do defendants have personal knowledge of whether or when Johnson awoke with swelling in his leg or foot as alleged in ¶ 17.

In addition, defendants have now responded to Johnson's motion by amending their answer to ¶ 12 and alleging that there was no lockdown at the institution on August 21, 2023. Dkt. 25 at 3 & Dkt. 26, ¶ 12. They also elaborated on their answers to ¶¶ 13–28. Dkt. 25 at 2. Johnson will be able to litigate the specifics of defendants' answers through discovery and motion practice. Fed. R. Civ. P. 8(b)(5) (statement that a party lacks knowledge or information sufficient to form a belief about the truth of an allegation has the effect of a denial). This does not create an unfair disadvantage as Johnson argues but rather is a very typical course for a case to take. If Johnson believes it is necessary, he can seek leave of court to serve additional interrogatories.[3] *See* Fed. R. Civ. P. 33(a)(1).

For these reasons, Johnson's motion for Rule 11 sanctions is DENIED.

### B. Motion to subpoena a deposition and to appoint a court reporter, Dkt. 40.

Johnson also moves the court to issue a subpoena for the deposition of nonparty Rhonda Cordero and to appoint a court reporter to record the deposition.[4] Cordero is the inmate complaint examiner who investigated Johnson's inmate complaint about defendants' alleged conduct in this case and recommended affirming the complaint. Dkts. 41-3 & 47-1. Johnson

---

[3] Before seeking this relief, Johnson must first meet and confer with opposing counsel to see if the parties can agree to an enlargement of the interrogatory limit. If good faith efforts fail, Johnson may then file a motion with the court and explain precisely how many additional interrogatories he needs and why.

[4] Johnson sent checks to the court for Cordero's witness fee and the court reporter's fee. As explained below, these will be returned to him.

alleges that he mailed Cordero a letter asking her to name the officers she spoke to about his complaint and wrote to defense counsel about deposing Cordero without response.

The court DENIES this motion without prejudice to its later renewal for two related reasons. First, Johnson already has access to the information that he purports to seek from Cordero's deposition and has not explained what more he needs from the deposition at this juncture. *See* Fed. R. Civ. P. 26(b)(2)(C)(i) (a court must limit the extent or frequency of discovery if the discovery sought can be obtained from a more convenient, less burdensome, or less expensive source). Second, Cordero is entitled to extra protections from discovery as a nonparty to this lawsuit, so even if she has relevant information to offer, the court will not authorize her deposition unless it is needed, and as explained below, it is not at this stage. *See* Fed. R. Civ. P. 45(d) (parties and the court are responsible for taking "take reasonable steps to avoid imposing undue burden or expense on a person subject to the subpoena").

Johnson would like Cordero to identify the officers she spoke with while investigating his inmate complaint and use this information to challenge defendant Feltz's alleged interrogatory response denying that Cordero spoke with him about the incident in question.[5] But Johnson has a copy of Cordero's September 13, 2023, response and recommendation, which does not need to be authenticated through Cordero and that speaks for itself. In it, Cordero explains her reasoning for recommending affirmance and indicates that she contacted Supervisor Ingenthron as well as "the officer[ ]s involved" in the incident. Dkts. 41-3 & 47-1.

---

[5] Johnson characterizes Feltz's interrogatory response as a denial, but in response to Johnson's interrogatories asking Feltz if he had spoken to complaint department staff about Johnson's request for an extra pillow, Feltz stated that he did not recall speaking with complaint department staff and that the institution complaint examiner would usually call him with any questions. Dkt. 47-1, ¶¶ 6 & 7.

It is plain that the "officer[ ]s involved" are those listed in the "Brief Summary" of the inmate complaint, "Sgt. Kim and CO Feltz." Dkt. 47-1 at 1. Cordero also acknowledges that Johnson had to wait until August 29, 2023 for an extra pillow and concludes that the delay in receipt was a "misunderstanding" on the officers' part because "they had felt the pillow was to be provided by" health services and had now been trained on the process. Dkts. 41-3 & 47-1.

Johnson does not explain why Cordero's response and recommendation is an insufficient summary of Cordero's reasoning or an insufficient means of rebutting defendant Feltz's alleged interrogatory response, necessitating Cordero's nonparty deposition now.[6] That said, should Johnson's claims proceed to trial, he may renew his motion to subpoena and will receive information about subpoenaing witnesses like Cordero for trial.

### C. Motions to compel discovery, Dkts. 30, 32, & 42.

Johnson has also filed three motions to compel discovery. The court will first address the parties' dispute regarding the motions' timing and then turn to Johnson's motion to require defendant Kim to sign his interrogatory responses by hand and his overlapping motions seeking production of certain emails.

### 1. The timing of Johnson's motions.

The parties dispute that Johnson afforded defendants sufficient time to correct the alleged deficiencies in their discovery responses before filing his motions to compel with the court. Defense counsel attests that Johnson has routinely filed motions to compel days after

---

[6] Johnson should keep in mind that, at summary judgment, he will not be required to prove his case to proceed to trial—he need only show a genuine dispute of material fact. *See* Fed. R. Civ. P. 56(a) (a party is entitled to summary judgment if there is no genuine dispute of material fact). And the court will view all facts and draw all inferences in the light more favorable to the nonmoving party. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 255 (1986).

she has received his meet and confer letters, affording her little time to respond before Johnson seeks court intervention. Indeed, Johnson's letter dated September 25, 2024 gave defendants only five days to produce the requested discovery or face a motion to compel, yet defense counsel attests that the letter was not received until October 7, 2024. Dkt. 35, ¶ 10 & Dkt. 35-3 at 2. Three days later, Johnson filed two motions to compel. Dkts. 30 & 32.

Going forward, Johnson must take into account mail delivery delays when communicating with defense counsel. Johnson argues that it is the date he placed his letters in the prison mail system that matters, so defendants had sufficient time to respond. Dkt. 38 at 4–6. That may be true with respect to certain court filings, *see Houston v. Lack*, 487 U.S. 266, 276 (1988) (recognizing the prison-mailbox rule and deeming a notice of appeal filed when delivered to prison officials for mailing), but discovery materials are not filed with the court—the parties exchange them. Placing a letter to defense counsel in the prison mail system does not put defense counsel on notice of a discovery dispute because it is not filed with the court and counsel is thus not aware of the letter until she receives it in the mail. Johnson is cautioned to be mindful of mail delivery delays when communicating with defense counsel as this case proceeds. Both parties have an obligation to work in good faith to resolve discovery disputes before seeking court intervention and to treat each other respectfully.

**2. Motion to compel defendant Kim to sign his responses to Johnson's first set of interrogatories. Dkt. 32.**

Johnson's motion to compel Kim to sign his interrogatory responses by hand as opposed to electronically lacks merit. Johnson argues that Federal Rule of Civil Procedure 33 requires a handwritten signature from Kim, and that this court only allows lawyers or pro se parties to sign and file documents electronically. As to the latter point, discovery responses are exchanged

8

between the parties, not filed with the court, as noted above. Regardless, Rule 5(d)(3) of the Federal Rules of Civil Procedure permits filings to be signed electronically. If electronic signatures are good enough for filings, they should be good enough for discovery responses. To this point—nothing in Rule 33 prohibits electronic signatures, and Johnson presents no authority interpreting that rule as mandating only handwritten signatures. *See* Fed. R. Civ. Pro. 33(b)(5) (requiring the person who makes the answers to "sign" them without specifying how to comply); *see also, e.g.*, *Allstate Ins. Co. v. A & F Medical P.C.*, Case Nos. 14-cv-6756 (JBW) & 15-CV-3639 (JBW), 2017 WL 2445185, at 2 (E.D. New York June 5, 2017) (nothing in Rule 33 "mandates that the requisite signatures be handwritten rather than electronic signatures"); Western District of Wisconsin, *Electronic Filing Procedures*, § III.E (allowing a non-filing user to sign documents for filing electronically). The court accepts Kim's electronic signature on his interrogatory responses as valid and DENIES this motion without further discussion.

### 3. Motions to compel production of emails, Dkts. 30 & 42

Johnson seeks to compel production of certain emails. While Johnson's motions may initially have had some merit, defendants have since worked to resolve the disputes with supplemental productions and information, so there is nothing for the court to compel at this time.

Johnson requested on August 18, 2024 that defendants produce, among other documents, all electronically stored information they have received from inmate complaint department and health services staff, and from Supervisor Ingenthron regarding the incident at issue in this lawsuit and his related inmate complaint. Dkt. 43-1, ¶¶ 9–11. Defendants responded on September 18, 2024 that their Department of Corrections email accounts were

9

being searched for the timeframe of August 21, 2023, to September 30, 2023 and that defendants would supplement their responses if any relevant emails were found. Dkt. 43-2, ¶¶ 9–11. Johnson filed a motion to compel on October 10, 2024, seeking production of the emails and arguing that defendants could not justify the delay in production because they are in full control of their email accounts. Dkt. 30 at 4.

The parties do not dispute the scope or relevance of Johnson's production request, but defendants' responses and production have come in fits and starts to Johnson's frustration. On October 24, 2024, defense counsel attested that the email search was complete, but any production had to be delayed while the emails were reviewed for protected health information. Dkt. 35, ¶ 12. If any responsive emails contained such information about Johnson, defense counsel explained that Johnson would need to sign an Authorization and Informed Consent Form before the emails could be produced. *Id.*, ¶ 13. Johnson initially argued that the emails likely did not contain such information and should be produced without delay, but attests that he signed and mailed to defendants an Authorization and Informed Consent Form on November 1, 2024. Dkt. 43, ¶ 4. Five days later, on November 6, 2024, defendants supplemented their responses to Johnson's production requests by producing an email regarding his inmate complaint and stating that no emails from Supervisor Ingenthron were found. *Id.* at 1 & ¶ 10. As for any emails from health services, defendants stated that they had not yet finished their search and would share the results when they received Johnson's consent form. *Id.*, ¶ 11.

The parties' communications continued to cross in the mail. Defendants' supplemental response prompted Johnson to file another motion to compel, noting that he had submitted the consent form and seeking immediate production of any emails from health services. Dkt.

10

42. In response, defendants have filed with the court a copy of the January 28, 2025 letter mailed to Johnson from defense counsel stating that no emails from health services responsive to his production request were found. Dkt. #45-1.

Johnson's motions to compel certain emails are now moot, so the court will DENY them as moot. The court has no reason to doubt that defendants' email accounts have been thoroughly searched for any messages responsive to Johnson's production requests and that defendants have produced what was found. Having resolved Johnson's pending discovery motions, the court advises him to shift his focus to reviewing the discovery he has and preparing for the summary judgment phase of this lawsuit.

**4. Motion to stay the dispositive motions deadline, Dkt. 46.**

Finally, Johnson moves to stay the February 14, 2025 dispositive motions deadline pending the court's ruling on his discovery motions. He argues that without a stay, he will not have enough time to review any additional discovery and prepare an opposition brief, but defendants have not yet filed a motion for summary judgment. Regardless, the court has now ruled on all of Johnson's pending motions and orders no additional discovery, so his motion to stay is DENIED as moot. If necessary, Johnson may request additional time to respond to any dispositive motion filed by defendants for good cause shown.

ORDER

IT IS ORDERED that:

1. Plaintiff's motion for Rule 11 sanctions, Dkt. 20, is DENIED.

2. Plaintiff's motion to grant his Rule 11 sanctions motion, Dkt. 27, is DENIED.

3. Plaintiff's motion to compel Kim's handwritten signature on his interrogatory responses, Dkt. 32, is DENIED.

4. Plaintiff's motions to compel the production of certain emails, Dkts. 30 & 42, are DENIED as moot.

5. Plaintiff's motion for a subpoena and to appoint a court reporter, Dkt. 40, is DENIED without prejudice to its renewal if plaintiff's claims survive summary judgment.  The clerk's office is directed to return plaintiff's $40 and $100 checks to him.

6. Plaintiff's motion to stay deadlines pending the court's ruling on his discovery motions, Dkt. 46, is DENIED as moot.

Entered February 3, 2025.

                                BY THE COURT:

                                /s/

                                _____
                                ANITA MARIE BOOR
                                Magistrate Judge